[Civ. No. 3377. First Appellate District, Division Two.—May 22, 1920.]

## KOKOA B. CONRAD, Respondent, v. WILLIAM LA PLANTE, as Executor, etc., Appellant.

[1] TRIALS—ACTION ON NOTES AND FOR MONEY LOANED—CONFLICTING EVIDENCE—PROVINCE OF TRIAL COURT—FINDING—APPEAL.—In this action, in four counts, three of which were upon promissory notes and the fourth for money loaned, the evidence of plaintiff and defendant being conflicting, the trial judge was required to determine whether he should believe the evidence offered on behalf of plaintiff or the confessions of fraud and swindling offered to support the position of defendant, and he having found in favor of plaintiff, his conclusion was not subject to reversal by the appellate court.

[2] ID.—DATE OF TRANSACTION — ERRONEOUS FINDING — ABSENCE OF PREJUDICE.—In such action, the plea of the statute of limitations not having been made, the defendant was not injured by a finding, in accordance with the fourth allegation of plaintiff's complaint, that a given sum of money was loaned by plaintiff to defendant on or about a specified date, from which date the judgment carried interest, whereas the testimony of plaintiff was that the loan was made at an earlier date.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frank G. Finlayson, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. R. Young for Appellant.

Dana Ong, Paul J. Schenck and Richard Kittrelle for Respondent.

NOURSE, J.—Defendant appeals from a judgment rendered against him and in favor of plaintiff for $2,750 upon a complaint containing four causes of action, the first three of which were upon promissory notes and the fourth for money loaned to the amount of $1,500. The attack upon the judgment is confined to that portion of it which relates to the fourth cause of action.

[1] The facts material to the opinion are: In November, 1915, plaintiff delivered to defendant $3,000 and received

from him shares of stock in the National Film Corporation of the par value of $2,000. As a part of the transaction it was agreed that the plaintiff should be employed as an actress or performer by the National Film Corporation at a salary of forty dollars per week. After plaintiff's money had been obtained by the defendant she was employed for a period of two weeks and paid the stipulated salary. Thereupon the corporation ceased to do business and permitted its charter to lapse through its failure to pay the state license tax. In February, 1916, plaintiff called upon defendant and made a demand for the return of her money, and thereupon defendant gave her $250 in cash, the three notes which are the basis of the first three causes of action herein, amounting to $1,250, and, as the plaintiff alleged and testified, promised to give her $1,500 more. The evidence relating to the transactions in November and February is conflicting. On behalf of plaintiff it is shown that the original transaction was a loan of $2,000, evidenced by a promissory note and secured by certificates of stock of the National Film Corporation of the par value of $2,000. The second installment of $1,000 it is claimed was also loaned to defendant by plaintiff, for which she received neither note nor security. On behalf of defendant it is claimed that the original transaction was a sale of 3,000 shares of the National Film Corporation at par for the sum of $3,000, which admittedly were of no value whatever. Defendant was president of this company.

The weakness of defendant's position in this respect is found in his own testimony to the effect that the company was at that time "broke and everybody knew it," and that the stock was worthless; also in the testimony of one Miller, an agent of defendant, that "our company was practically broke, and we didn't know whether we were going to get another dollar in or not; and I was broke, and everybody else was broke; so it was a very uncertain proposition." Then the witness Hale, an employee of Parsons at the time of the original transaction, testified regarding the conversations had in his presence between defendant and Miller, as follows: "Mr. Miller said we had a sucker, in plain English, talking of a woman who got money, and going to put in so much money, lend so much money, but you have to use her. I says, 'Has she ever done acting?' I was told no. I says,

'Good-night,' that is my favorite expression. Then I was explained to use this woman's money, we can't make any— Q. Who stated this? A. Mr. Parsons. Q. Did he say who the woman was? A. Miss Kokoa, Princess Kokoa—Kokoa Baldwin. Q. Was there anything more stated there with reference to the— A. She was to put $3,000 in—she was to loan $3,000 to the company, for which she was to receive some National stock security. She was to receive stock for security and this $3,000, or whatever the sum was—I can't swear to that, Judge—that sum, but it was in the thousands—we were to make two pictures and get some money— Q. Who said that? A. Mr. Parsons. Q. At the time when Mr. Miller was present? A. Well, Mr. Miller was in and out of the studio; I can't exactly say that he was out. Mr. Miller was present on one occasion when discussing this money matter, he was to get his share out of it, $500, for getting the money, and I got $150 out of it, two weeks' work. The Court: Who said Mr. Miller was to get $500 out of it? A. Parsons told me that this money Mr. Miller was to procure and from this money he gets a commission of $500, which only would leave us $2,500 to make the pictures. . . . Q. Have you stated all that was said about lending the money? A. Well, lending of the money—I don't know who it was made to directly, but Mr. Parsons was to give security of National stock for the loan of the money. I remember he said that, laughing, he says, 'I gave her some security, National Film Corporation stock.' "

In addition to this it is admitted that defendant, who was practically the sole owner of the stock of the corporation, had failed to pay the state license tax, so that the corporation forfeited its right to do business at about the time this transaction was had. On this evidence the trial court was required to determine whether it should believe the evidence offered on behalf of the plaintiff or the confessions of fraud and swindling offered to support the position of the defendant. Conflict in the evidence is clear, and even if this court could substitute its conclusion for that of the trial court, it would not be disposed to do so in view of the character of the evidence offered by defendant.

The evidence relating to the transaction occurring on February 15, 1916, is confined solely to the conflicting testimony of plaintiff and defendant, they being the only persons present at any time while the transactions were had.

The plaintiff testified that she returned to defendant his promissory note and the stock which she asserted had been delivered to her as security, and that in return therefor defendant paid her $250 in cash, gave her three notes amounting to $1,250, and promised to pay her $1,500 more at a future date. Defendant testified that plaintiff appealed to him in a destitute condition, requesting him to buy back the stock which he claimed to have sold to her in the preceding November, and he gave her $250 therefor, though he knew at the time that the stock was worthless; that the three notes were given with the understanding that they would be payable only in the event that defendant was able to sell one of the pictures in which plaintiff had participated, and that no promise of any nature was given regarding the payment of $1,500, nor any other sum than that evidenced by the three notes.

It is argued that plaintiff's story is incredible because, having taken written promises to pay $1,250, it is highly improbable that she would have accepted a verbal promise to pay $1,500 with no written evidence thereof. But defendant's story regarding this transaction is just as incredible. The trial court had both witnesses before it; it had rejected defendant's testimony regarding the transaction of November, 1915, and was in a position to determine whether plaintiff's story of the February transaction should be believed. The finding of the court upon this issue cannot be disturbed.

[2] It is argued by appellant that the evidence does not support the finding that the sum of $1,500 was loaned on or about the fifteenth day of February, 1916, as alleged in the fourth cause of action. In this connection it is said that, accepting plaintiff's story of the entire transaction, this loan was made in November, 1915, and not at the time alleged in the complaint. The judgment carries interest from the fifteenth day of February, 1916, and defendant is not harmed by the finding that the loan was not in fact made at an earlier date. This is especially true in a case where, as here, the plea of the statute of limitations is not made. Thus, if the finding was erroneous, it was harmless error which would not support a reversal.

For the reasons given the judgment is affirmed.

Langdon, P. J., and Brittain, J., concurred.